IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

MARCEL ALEXIA FLOREA and
IULIA FLOREA,                                  CV 08-52-M-DWM-JCL

            Plaintiffs,                        FINDINGS AND
                                               RECOMMENDATION OF
      vs.                                      UNITED STATES
                                               MAGISTRATE JUDGE
WERNER ENTERPRISES, INC., a
Nebraska Corporation, et al.,

            Defendants.

_____

       Pending before the Court is Defendant A & A Express, Inc.'s Motion for

Summary Judgment requesting the Court dismiss all claims advanced against it in

this action.  For the reasons stated below the Court deems it appropriate to

recommend that the motion be denied.

## I.    BACKGROUND

       This action arises from a series of accidents involving multiple vehicles

which occurred on February 18, 2007, near mile marker 39 on Interstate 90 in

Mineral County, Montana.  Several semi trucks, including one operated by A & A

Express ("A & A"), were involved in the accident.  Plaintiff Marcel Florea was a

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 1

passenger in one of the semi trucks involved, and he suffered physical injuries in the accident. While the majority of material facts relevant to A & A's summary judgment motion are not genuinely disputed by the parties, several specific genuine issues of material facts exist which preclude judgment in favor of A & A.

A & A's truck involved in the accident was driven by Richard Renner. Mr. Renner was traveling westbound on I-90 in the dark, early morning hours of February 18, 2007, under extremely icy road conditions. As he approached the location where the accidents subsequently occurred his trailer began sliding on the ice. Mr. Renner stated in his deposition that "[t]he road got real icy [...], but I got slowed way down and I couldn't drive anymore because it was so icy, so I pulled over on the shoulder of the road, [and] put my 4-ways on[.]" Deposition of Richard Renner (December 4, 2008) at 34 (Dkt. # 129-3). Mr. Renner pulled his truck to the right and he stopped it on the emergency lane or shoulder portion of the highway, outside of the right-hand lane or "driving lane" of I-90. A & A's Statement of Undisputed Facts at ¶ 6. Photographs taken at the scene of the accidents accurately depict the relative location of Mr. Renner's truck where it stopped on the emergency lane of I-90. *See* Dkt. # 118-5 page 2 of 3, and # 118-6 page 3 of 3. Thus, Mr. Renner successfully stopped his truck on the emergency

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 2

lane of I-90 without colliding with any other vehicle.

The location where Mr. Renner stopped his truck was midway through a portion of the westbound lane of I-90 which curves to the right.  His truck was parked on the inside of the curve.  The layout of that particular curve is such that the westbound traffic travels into the curve going downhill, and travels out of the curve going uphill.  Additionally, the curve is "super-elevated" and slopped to the right - the south side of the highway is at a higher elevation than the north side of the highway.

Mr. Renner's truck remained stopped throughout the duration of the events which transpired after he stopped his truck.  In his deposition Mr. Renner agreed it was not a good place to stop due to the road conditions at that point on the interstate, but he did not have any choice.  Renner Depo. at 98.

The first Werner Enterprises truck involved in the accident, driven by Jason Wood, was east of Mr. Renner's location traveling westbound, and approached Mr. Renner's truck from the rear.  Mr. Renner states his truck was stopped for "just a few minutes", or maybe "five minutes" when Mr. Wood's truck or trailer hit Mr. Renner's trailer.  Renner Depo. at 71 (Dkt. # 129-3).  Mr. Wood's truck and trailer made only minimal contact with Mr. Renner's trailer, and Mr. Wood

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 3

proceeded past Mr. Renner's truck to the west on I-90.  The tires on Mr. Wood's

truck began spinning, however, and he was unable to climb up the hill to the west

of Mr. Renner's truck, so Mr. Wood pulled his truck to the right on the shoulder or

emergency lane of I-90 and stopped.

After stopping his truck Mr. Wood got out and walked back to Mr. Renner's

truck to speak with him.  The two men visited and walked to the rear of Mr.

Renner's trailer to inspect the damage.  The two men then walked back towards

the cab of Mr. Renner's truck.

At that time, Schneider National Carrier, Inc.'s ("Schneider") truck, driven

by Vyacheslov Chertov, was traveling westbound on I-90 approaching Mr.

Renner's truck from the rear.  Plaintiff Marcel Florea was a passenger in the

Schneider truck, and he was asleep in the cab of the truck.  While Mr. Wood and

Mr. Renner were walking back towards the cab of Mr. Renner's truck, the

Schneider truck crashed into the rear of Mr. Renner's truck.  The Schneider truck's

collision with Mr. Renner's truck occurred "ten minutes maybe", or "five to ten

minutes" after Mr. Wood's truck collided with Mr. Renner's trailer.  Renner Depo.

at 71-72 (Dkt. # 129-3).  Thereafter, additional trucks operated by the other parties

to this action collided with the vehicles at the location of Mr. Renner's, Mr.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 4

Wood's, and Schneider's trucks.

Plaintiffs advance claims against A & A alleging it, as well as the other Defendants, are liable for their negligence with respect to the accidents. Defendants Werner Enterprises, Inc., Airline Transportation Specialists, Inc., and CR England, and Third-Party Defendant Schneider National Carriers, Inc. (collectively referred to hereinafter as "Defendants") have all asserted cross claims and/or third-party claims against A & A.  Defendants allege A & A was negligent in the accident and is liable to them for both their own damages and for indemnity or contribution with respect to Plaintiffs' claims and damages.

## II.   APPLICABLE LAW

### A.   Summary Judgment

Federal Rule of Civil Procedure 56(c) entitles a party to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  An issue of fact is "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if it may affect the outcome of the case.  *Id*. at 248.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 5

"In considering a motion for summary judgmt, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds as noted in Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

### B. Substantive Law of Montana

Because jurisdiction over this action is founded upon diversity of citizenship under 28 U.S.C. § 1332, the Court applies the substantive law of Montana, the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

## III. DISCUSSION

Plaintiffs' claims against the various Defendants are predicated upon their allegedly negligent operation of their trucks. Defendants' cross claims and the third-party cross-claims are similarly premised on theories of negligence.

"Negligence is the failure to use the degree of care that an ordinarily prudent person would have used under the same circumstance." *Barr v. Great Falls International Airport Authority*, 2005 MT 36, ¶ 41, 326 Mont. 93, 107 P.3d 471 (2005).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 6

To maintain an action in negligence, the plaintiff must prove four essential elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the breach was the actual and proximate cause of an injury to the plaintiff, and (4) damages resulted.

*Peterson v. Eichhorn*, 2008 MT 250, ¶ 23, 344 Mont. 540, 189 P.3d 615 (2008).

Summary judgment dismissing a claim of negligence is appropriate if the party advancing the claim fails to establish one of the four elements. *Hagen v. Dow Chemical Co.*, 261 Mont. 487, 492, 863 P.2d 413, 416 (1993).

In moving for summary judgment A & A asserts that there existed no legal duty it owed the other parties at the time of the underlying incident. A & A's argument is premised upon its conclusion that its operator, Mr. Renner, was legally parked in the emergency lane - completely off the "main-traveled" part of the highway - before it was struck by the Schneider truck. From this premise, A & A argues it cannot, as a matter of law, be found to have owed the other parties a legal duty.

Rather, given the fact that Mr. Renner's truck was parked entirely in the emergency lane, A & A argues each Defendant whose truck collided with Renner's truck negligently moved out of their respective driving lane in violation

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 7

of Mont. Code Ann. § 61-8-328(1).[1]  A & A asserts it had no duty to anticipate

this negligence on the part of the other Defendants, citing *Anderson v. Werner*

*Enterprises, Inc.*, 1998 MT 333, ¶ 37, 292 Mont. 284, 972 P.2d 806 (1998) ("a

driver does not have a duty to anticipate injury which comes about only as the

result of the negligence of another").  A & A thus concludes that at the time of the

underlying incident it owed no legal duty to the other parties.

Contrary to A & A's position there exist genuine issues of material fact as to

whether A & A's operator, Mr. Renner, was negligent in parking his truck in the

emergency lane at the time of the underlying incident.

### A.    Stopping or Parking on Highway - Mont. Code Ann. § 61-8-353

Montana law limits the circumstances under which a driver can stop or park

a vehicle on the highway.  Specifically, Mont. Code Ann. § 61-8-353 states, in

relevant part, as follows:

> Upon any highway outside of a business or residence district no person shall
> stop, park, or leave standing any vehicle, whether attended or unattended,
> upon the paved or main-traveled part of the highway when it is practical to
> stop, park, or so leave such vehicle off such part of said highway, but in

---

[1]Mont. Code Ann. § 61-8-328(1) states:

A vehicle must be operated as nearly as practicable entirely within a single
lane and may not be moved from the lane until the operator has first
ascertained that the movement can be made with safety.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 8

every event an unobstructed width of the highway opposite a standing
vehicle shall be left for the free passage of other vehicles.

Mont. Code Ann. § 61-8-353(1).

In opposing A & A's motion, the other Defendants generally contend that

under the conditions which existed at the time of the underlying incident, Renner

violated § 61-8-353 by parking his vehicle in the emergency lane at the location he

did.

A & A makes very cursory arguments asserting that § 61-8-353(1) does not

prohibit stopping or parking in the emergency lane, which it also refers to as the

"shoulder".  A & A's argument implicitly suggests that the terms "paved" and

"main-traveled" part of the highway as used in § 61-8-353(1) are synonymous.  A

& A thus argues § 61-8-353(1) only prohibits stopping or parking on the "main-

traveled part" of the highway - or in its words, the "driving portion" - not the

emergency lane.  A & A does not offer any legal analysis as to the proper

construction to be afforded § 61-8-353(1) as it applies to the emergency lane.

With its argument so limited, A & A concludes its analysis by asserting that the

construction of § 61-8-353(1) is "irrelevant" because it was not "practical", within

the contemplation of § 61-8-353(1), for Mr. Renner to stop or park his truck in any

other location given the existing conditions.  Dkt. # 125, p. 4.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 9

A "highway" is defined as "the entire width between the boundary lines of every publicly maintained way when any part of the publicly maintained way is open to the use of the public for purposes of vehicular travel."  Mont. Code Ann. §§ 61-1-101(23) and 61-8-102(2)(g).  The term "roadway", in turn, is defined as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder."  Mont. Code Ann. § 61-1-101(60). Without expressly referencing § 61-1-101(60), it appears A & A may be relying upon the definition of "roadway" when it asserts that parking on the "shoulder" of the interstate is not prohibited by § 61-8-353(1).  A & A does not present any legal authority that supports this contention.

It must be noted that the term "shoulder" as used throughout Montana Code Annotated is not expressly defined.  *See e.g.* Mont. Code Ann. § 61-8-605(1)(b) (pertaining to bicycle use and defining "roadway" as "that portion of a highway improved, designed, or ordinarily used for vehicular travel, including the paved shoulder."); § 61-8-506(2) (providing that a pedestrian "walking along and upon a highway may walk only on the shoulder, as far as practicable from the edge of the roadway."); § 60-2-208(1) (referring to the "shoulder" along a federal-aid highway as that portion of the right-of-way that must be seeded with grass).  While the

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 10

Code does not use the term "emergency lane", the Montana Supreme Court has utilized this term to describe the "parking or emergency lane" on the right hand side of one's direction of travel on the interstate highway that is "separated from the right driving lane by a solid painted line." *Damjanovich v. Western Fire Ins. Co.*, 204 Mont. 455, 456, 665 P.2d 1128, 1129 (1983). This Court also uses the term to describe the portion of the highway on which the A & A truck was parked.[2]

In construing § 61-8-353(1) the Court must first look to the plain meaning of the words used in the statute. *Thiel v. Taurus Drilling Ltd. 1980-II*, 218 Mont. 201, 205, 710 P.2d 33, 35 (1985). Affording the term "paved" its literal meaning, § 61-8-353(1) would properly be construed to preclude parking a vehicle in the emergency lane whenever it is "practical to stop, park, or so leave such vehicle off" the emergency lane of the highway. A construction which treated the term "paved" synonymously with the term "main-traveled part" would also ignore the accepted meaning of the disjunctive "or" and thereby eliminate the independent significance of the terms intended by the use of the disjunctive.

---

[2]As a matter of common parlance, the emergency lane is alternatively referred to as the "hard shoulder" and "breakdown lane". *See e.g. Wikipedia, The Free Encyclopedia*, Shoulder (road), http://en.wikipedia.org/wiki/Emergency_lane (accessed May 20, 2009).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 11

A & A contends it was not "practical" for Mr. Renner to stop or park his truck in any other location, thus making it legal under Mont. Code Ann. § 61-8-353(1) for him to stop his truck in the emergency lane of I-90.  Mr. Renner testified in his deposition that I-90 was so icy that he could not drive any further, so he pulled over to the side of I-90.  Renner Depo. at 34 (Dkt. # 129-3).  Mr. Renner stated he had no choice but to stop his truck at that location.  *Id*. at 98.

In contrast, the other Defendants contend it was practical for Mr. Renner to continue traveling further west on I-90.  In support of their contention, they note that the first Werner Enterprises truck that arrived at the scene continued on past Mr. Renner's truck for at least a short distance.  Deposition of Jason Wood (January 13, 2009) at 88-91 (Dkt. # 129-4).

For purposes of applying Mont. Code Ann. § 61-8-353(1), "[w]hat is 'practical' in any situation clearly depends upon all of the surrounding facts and circumstances."  *Gunnels v. Hoyt*, 194 Mont. 265, 272, 633 P.2d 1187, 1192 (1981).  This question of fact is for the jury to resolve (*Gunnels*, at 272, 633 P.2d at 1192), and cannot be resolved in this summary judgment proceeding.  Thus, at this juncture, the Court cannot conclude that Mont. Code Ann. § 61-8-353(1) did not impose a duty on Mr. Renner not to stop on I-90.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 12

**B.**     <u>Common Law Duty of Care</u>

The "practicality" consideration in Mont. Code Ann. § 61-8-353(1)

implicates the general duty of care imposed both as a matter of common law and

statutory law under Mont. Code Ann. § 27-1-701.  The fundamental issue relative

to all these duties is whether it was reasonable and prudent for Mr. Renner to stop

or park his truck in that particular location.

The common law requires that all individuals and entities must "use the

degree of care that an ordinarily prudent person would have used under the same

circumstance."  *Barr*, 2005 MT 36, ¶ 41.  *See also Fisher v. Swift Transportation*

*Co., Inc.*, 2008 MT 105, ¶ 16, 342 Mont. 335, 181 P.3d 601 (2008).  Similarly,

Mont. Code Ann. § 27-1-701 states, in part, as follows:

> Except as otherwise provided by law, everyone is responsible not only for
> the results of his willful acts but also for an injury occasioned to another by
> his want of ordinary care or skill in the management of his property or
> person[.]

The existence of a specific duty applicable in a particular situation "is a

question of law to be determined by the court[,]" and "turns primarily on

foreseeability."[3]  *Fisher*, at ¶ 17 (quoting *Eklund v. Trost*, 2006 MT 333, ¶ 40, 335

---

[3]The issue of whether a legal duty exists is a question of law for the court's
determination on summary judgment.  *Jackson v. State of Montana*, 1998 MT 46,
¶ 31, 287 Mont. 473, 956 P.2d 35 (1998).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 13

Mont. 112, 151 P.3d 870 (2006)). Thus, the court must "ask 'whether the defendant could have reasonably foreseen that his or her conduct could have resulted in any injury to the plaintiff.'" *Fisher*, at ¶ 21 (quoting *Hinkle v. Shepherd School Dist. # 37*, 2004 MT 175, ¶ 30, 322 Mont. 80, 93 P.3d 1239 (2004)). "A plaintiff is a foreseeable plaintiff if she or he is within the 'foreseeable zone of risk' created by the defendant's negligent act." *Fisher*, at ¶ 21.

With respect to interstate highway drivers, one who fails to act in a reasonable and prudent manner can "easily foresee that other people on the highway might be hurt as a result of his negligence." *Fisher*, at ¶ 23. "The zone of risk created by a negligent driver necessarily includes other drivers and passengers in his immediate vicinity." *Id*.

Both the common law and § 27-1-701 subjected Mr. Renner to a basic duty of care with respect to the location at which he stopped and parked his truck. Mr. Renner stopped his truck at the bottom of a hill on I-90, to the right-hand side of the interstate, and on the inside of a curve where the surface of the interstate was sloped to the right. In essence, Mr. Renner's truck was located at the bottom of a funnel where the direction of all sloping and icy surfaces led to the location he

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 14

parked his truck.  A reasonably prudent person in Mr. Renner's position could foresee that all other drivers and passengers in his immediate vicinity were within a zone of danger created by the risk imposed by virtue of the location of his truck.

The Court's determination of whether a duty exists also depends "upon a weighing of policy considerations for and against the imposition of liability." *Jackson v. State of Montana*, 1998 MT 46, ¶ 38, 287 Mont. 473, 956 P.2d 35 (1998) (quoting *Singleton v. L.P. Anderson Supply Co., Inc.*, 284 Mont. 40, 44, 943 P.2d 968, 971 (1997)).  The policy considerations the court must consider are as follows:

> (1) the moral blame attached to a defendant's conduct; (2) the prevention of future harm; (3) the extent of the burden placed on the defendant; (4) the consequences to the public of imposing such a duty; and (5) the availability and cost of insurance for the risk involved.

*Fisher*, at ¶ 28 (quoting *Prindel v. Ravalli County*, 2006 MT 62, ¶ 37, 331 Mont. 338, 133 P.3d 165 (2006)).

The Court concludes the foregoing considerations weigh in favor of imposing a common law duty on A & A under the circumstances of this case. Although the moral blame attached to A & A and Mr. Renner for the location of Mr. Renner's truck is minimal, the imposition of a duty to act in a reasonable and prudent manner would serve to prevent future harm in circumstances similar to

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 15

those present in this case.  The common law duty to use the degree of care that an

ordinarily prudent person would have used under the same circumstance, i.e. to

avoid placing the A & A truck in that particular location or to avoid placing

yourself or your vehicle in those particular circumstances on an icy interstate, does

not impose an undue burden on A & A or any other driver.  Even if the duty means

a driver should avoid driving on an extremely icy interstate under road conditions

such as those that the parties experienced in this case, and trucking companies are

temporarily unable to continue transporting goods on a particular interstate

highway, then the consequences to the public are almost non-existent.

### C.    Warning Devices Required by 49 C.F.R. § 392.22

The Defendants also argue that the Federal Motor Carrier Safety

Regulations required Mr. Renner and A & A to set out warning devices on the

interstate at the location Mr. Renner stopped his truck.  Those federal regulations

require, in part, as follows:

> [W]henever a commercial motor vehicle is stopped upon the traveled
> portion or the shoulder of a highway for any cause other than necessary
> traffic stops, the driver shall, as soon as possible, but in any event within 10
> minutes, place the warning devices required by § 393.95 of this subchapter,

49 C.F.R. § 392.22(b)(1).  A & A does not dispute that this regulation applied to

the circumstances of this case and Mr. Renner's parked truck, but it argues it did

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 16

not have sufficient time to comply with the regulation's requirements.

Mr. Renner's own deposition testimony raises a genuine issue of material fact as to whether 10 minutes or more went by after stopping his truck and before Marcel Florea in the Schneider truck collided with Mr. Renner's truck. Mr. Renner stated his truck was stopped for "just a few minutes", or maybe "five minutes" by the time Mr. Wood's trailer hit Mr. Renner's trailer. Renner Depo. at 71 (Dkt. # 129-3). Then, Mr. Renner stated that the Schneider truck collided with Mr. Renner's truck "ten minutes maybe", or "five to ten minutes" after Mr. Wood's truck collided with Mr. Renner's trailer. Renner Depo. at 71-72 (Dkt. # 129-3). Therefore, by Mr. Renner's own testimony, it is possible that as many as 15 minutes elapsed from the time he stopped his truck to the time the Schneider truck ran into the rear of his truck.[4]

A & A suggests Mr. Renner simply did not have enough time to set out the warning devices before the first collision occurred. It contends its compliance with the regulation was not possible because Mr. Wood's truck collided with Mr. Renner's truck less than five minutes after Mr. Renner stopped his truck.

─────────────────

[4]It is undisputed that Mr. Renner never did set out the required warning devices. He stated he was going to put them out, but he did not have a chance to do so. Renner Depo. at 34.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 17

A & A's argument regard the timing of the first collision with Mr. Wood's truck, however, is unavailing because it does not negate the requirements imposed by the regulation.  The fact that the first collision occurred less than 5 minutes after Mr. Renner stopped his truck did not relieve Mr. Renner from the requirement to put out the warning devices within 10 minutes after stopping.

Also, Mr. Wood's collision did not physically prevent Mr. Renner from putting out the warning devices.  At least some of the warning devices were to be placed east of, and to the rear of Mr. Renner's truck in the direction of approaching traffic.  49 C.F.R. § 392.22(b)(1)(i) & (ii).  Mr. Wood's truck stopped to the west of Mr. Renner's truck, opposite the direction of approaching traffic, and did not prevent Mr. Renner from complying with the regulation.

Finally, Marcel Florea and the Schneider truck did not arrive at the location of Mr. Renner's truck until as much as 15 minutes later.  Thus, Mr. Renner had sufficient time to comply with 49 C.F.R. § 392.22(b)(1) by the time the Schneider truck collided with Mr. Renner's truck.  Instead, Mr. Renner spent his time visiting with Mr. Wood and inspecting the damage to Mr. Renner's trailer.

As the foregoing discussion reflects, there exists a genuine issue of material fact whether or not Mr. Renner complied with 49 C.F.R. § 392.22 which precludes

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 18

summary judgment in favor of A & A.

## IV.   CONCLUSION

A & A's Motion for Summary Judgment seeking to establish that it was not subject to any legal duties under the circumstances of this case fails as a matter of law.  At a minimum, A & A's conduct in this case is governed by the common law reasonable and prudent person standard under common law, the duties under Mont. Code Ann. §§ 27-1-701 and 61-8-353(1), and the requirements of 49 C.F.R. § 392.22(b)(1).  Accordingly, IT IS HEREBY RECOMMENDED that A & A's Motion for Summary Judgment be DENIED.

DATED this 20th day of May, 2009.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 19