## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

| | |
|---|---|
| MARCEL ALEXIA FLOREA and<br>IULIA FLOREA, | CV 08-52-M-DWM-JCL |
| Plaintiffs, | FINDINGS AND |
| | RECOMMENDATION OF |
| vs. | UNITED STATES |
| | MAGISTRATE JUDGE |
| WERNER ENTERPRISES, INC., a<br>Nebraska Corporation, et al., | |
| Defendants. | |

_____

Pending before the Court is Third-Party Defendant Schneider National

Carriers, Inc.'s ("Schneider") Motion for Partial Summary Judgment.  The Court

heard oral argument from the parties on June 5, 2009, with respect to the pending

motion.  For the reasons stated below the Court deems it appropriate to

recommend that the motion be denied.

## I.    BACKGROUND

This action arises from a series of collisions involving multiple vehicles

which occurred on February 18, 2007, on Interstate 90 in Mineral County,

Montana.  Several semi trucks were involved in the accident, including one

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 1

operated under contract by Schneider.  Plaintiff Marcel Florea was a passenger in the Schneider truck which was being driven by Vyacheslav Chertov.  Chertov and Florea were performing freight transportation services under contract at the time of the accident.

Florea commenced this action on April 17, 2008, to recover compensation for injuries he sustained in the accident.  On November 6, 2009, he filed a Second Amended Complaint adding his wife, Iulia Florea, as a Plaintiff.

The Floreas advance their claims against Defendants A & A Express, Inc., Werner Enterprises, Inc., Airline Transportation Specialists, Inc., and CR England (collectively referred to hereinafter as "Defendants") all of which operated semi trucks involved in the accident.  Defendants, in turn, have pled cross-claims against each other, as well as third-party claims against Schneider.  The Defendants' respective claims seek indemnification, contribution, and damages from the other Defendants and Schneider.

Schneider's summary judgment motion requests dismissal of all Defendants' claims for indemnification and contribution pled against Schneider on the grounds that the exclusivity provisions of applicable workers' compensation laws immunize it from liability.  Schneider concedes it was not Florea's direct

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 2

"employer", but contends that Florea was working for Schneider as an employee

leased from a non-party entity named Kost Trucking, Inc. ("Kost").

Schneider's theory is premised on its characterization of its agreement with

Kost as an "employee leasing agreement".  Schneider contends Kost qualifies as

an "employee leasing company", and that Schneider is the "client company" - the

entity which leases employees from another entity in an employee leasing

arrangement.  Like a direct employer, generally a "client company" is also entitled

to protection against liability to a "leased employee" by virtue of the exclusivity

provisions of workers' compensation laws.  Schneider's entire summary judgment

motion thus depends on establishing that Florea is properly considered to have

been a "leased employee" of Schneider.

## II.    APPLICABLE LAW - SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) entitles a party to summary judgment

"if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  The party moving for summary judgment

"bears the initial burden to demonstrate the absence of any genuine issue of

material fact."  *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 3

2007).  An issue of fact is "genuine" if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248-49 (1986).  A fact is "material" if it may affect the outcome of the case.  *Id*. at 248.  A movant may satisfy its summary judgment burden where the documentary evidence produced by the parties permits only one conclusion.  *Id*. at 251.

Once the moving party has satisfied its burden, the party is entitled to summary judgment unless the non-moving party designates, through evidentiary materials, affidavits, depositions, answers to interrogatories or admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Cattrett*, 477 U.S.  317, 324 (1986).

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *abrogated on other grounds as noted in Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 4

III.    **DISCUSSION**

A.    **Documentary Evidence of the Parties' Relationships**

On December 4, 2005, Florea entered an "Independent Contractor Agreement" with Kost.  Dkt. # 104-7.  Pursuant to that agreement Florea agreed to provide services to Kost by driving an over-the-road tractor owned by Kost for the purpose of transporting freight provided by Schneider.  The agreement describes the relationship between Kost and Florea by declaring that Florea "is an Independent Contractor with respect to [Kost], and is not an employee."  Dkt. # 104-7 at 1.

On December 5, 2005, Florea signed a "Letter of Understanding" relative to his relationship with Schneider.  Dkt. # 104-13.  The letter sets forth Florea's understanding as follows:

> [M]y business relationship, including, but not limited to my employment status, workers compensation and/or occupational accident insurance, unemployment insurance, method and amount of compensation, etc[.], exists solely between [Kost] [...] and me and that [Schneider] is not involved in or responsible for such relationship.

Dkt. # 104-13.

On February 5, 2006, Schneider and Kost entered an "Independent Contractor Operating Agreement" ("ICOA").  Dkt. # 94-3.  In general, Schneider

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 5

agreed "to make freight available to [Kost] for transportation by [Kost][.]"  *Id*. at 7

of 46, ¶ 1.  In return, Kost agreed to "render freight loading, transporting and

unloading services" through the use of semi tractors owned by Kost which would

be used, among other things, to pull trailers owned by Schneider.  *Id*. at 7-8, and

24 of 46, ¶¶ 2.(a) and 15.(a); Affidavit of Oleg Kostyuk (April 18, 2009) at ¶ 3.

Under the ICOA Kost agreed to "provide competent" and "properly qualified

drivers" for its trucks, and the drivers were "its drivers", i.e. "drivers and/or

workers employed by [Kost]".  Dkt. # 94-3 at 9-10, and 14 of 46, ¶¶ 2.(d), (g), (h),

(i), and 5.(d).  Kost's semi-tractors "were only operated by drivers supplied to

[Schneider] by [Kost] through its contractual relationship with [Schneider]."  Aff.

of Kostyuk at ¶ 4.  The ICOA recognized that Kost's drivers were "operating

[Kost's] Equipment on behalf of [Kost]."  Dkt. # 94-3 at 9-46, ¶ 2.(h).

The ICOA provided that Kost retained control over its business and its

employees.  The recitals to the ICOA note that Kost "desires to retain full control

and direction of all aspects of [Kost's] business[.]"  Dkt. # 94-3 at 7 of 46.

Accordingly, Kost retained the right to:

> determine the manner, means and methods of performance of all Freight
> Transportation Services rendered hereunder and shall retain all
> responsibility for same including, but not limited to, the following:

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 6

> (i)     The wages, hours, working conditions, management[,]
> supervision and all other aspects and requirements of any kind
> whatsoever related to [Kost's] employees[.]

Dkt. #94-3 at 8 of 46, ¶ 2.(b)(i).  Kost was obligated to pay or withhold

employment-related taxes and fees imposed "by virtue of [Kost's] status as an

employer or sole proprietor, as the case may be for its employees and agents."  *Id*.

at 15 of 46, ¶ 6.(c).  Kost also agreed to provide workers' compensation coverage

for its employees driving its semi-tractors.  *Id*. at ¶ 7.(a).

The ICOA clarified that Kost's drivers were not Schneider's employees.  Of

primary significance is the following paragraph of the ICOA:

> [Kost] and [Schneider] understand and agree that the relationship of [Kost]
> to [Schneider] is that of an independent contractor solely.  Nothing
> contained herein or otherwise shall be construed in such a manner as to
> create the relationship of principal/agent or employer/employee,
> master/servant or a joint venture between [Schneider] and [Kost] or [Kost's]
> employees or agents.  Except as provided herein, no party shall have the
> authority to bind or otherwise obligate the other in any manner. [Kost] shall
> have sole control and direction of the manner and means of rendering
> Freight Transportation Services hereunder.

Dkt. # 94-3, at 28 of 46, ¶ 25.

Another provision of the ICOA further sought to maintain Kost and

Schneider's independent contractor relationship.  In accordance with applicable

federal law and regulations, Schneider was deemed to have "exclusive possession,

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 7

control and use of the Equipment" (referring to Kost's equipment), and assumed "complete responsibility for the operation" of Kost's equipment.  Dkt. # 94-3 at 10 of 46, ¶ 3.(c).  Nonetheless, the ICOA clarified that "nothing in this provision is intended to affect whether [Kost] or any driver provided by [Kost] are independent contractors or employees of [Schneider]."  *Id*.

Florea received his employment or independent contractor compensation directly from Kost.  Deposition of Marcel Florea (March 18, 2009) at 135.  Florea never received a paycheck from Schneider.  *Id*. at 219.

Schneider agrees that it was not Florea's employer.  Dkt. # 93 at 3. Schneider also agrees that Florea was employed by Kost, and that Florea was covered by workers' compensation insurance provided by Kost.  Dkt. # 93 at 2; Schneider's SUF at ¶ 7.  Florea presently receives workers' compensation benefits for his injuries sustained in the subject accident in the State of California pursuant to insurance procured by Kost.  Schneider's SUF at ¶ 10.

## B.   <u>Construction of the ICOA</u>

With respect to Schneider and Kost's relationship under the ICOA, those parties agreed that the ICOA "shall be governed by the laws of the United States and of the State of Wisconsin[.]"  Dkt. #94-3 at 30 of 46, ¶ 35.  Accordingly, the

Court will look to Wisconsin law on the interpretation of contracts to construe the

ICOA to determine its nature and meaning.

Under Wisconsin law the interpretation of a written contract is a question of

law for the court to resolve. *Schmitz v. Grudzinski*, 141 Wis. 2d 867, 871, 416

N.W.2d 639, 641 (Wis. App. 1987). Where the terms of a contract are plain and

unambiguous, the court must construe the contract "without considering how the

parties might have construed it." *Schmitz*, 141 Wis. 2d at 871, 416 N.W.2d at 641.

> The language of a contract must be understood to mean what it clearly
> expresses. A court may not depart from the plain meaning of a contract
> where it is free from ambiguity. In construing the terms of a contract, where
> the terms are plain and unambiguous, it is the duty of the court to construe it
> as it stands, even though the parties may have placed a different
> construction on it.

*Raasch v. City of Milwaukee*, 310 Wis. 2d 230, 241, 750 N.W.2d 492, 497 (Wis.

App. 2008) (quoting *Cernohorsky v. Northern Liquid Gas Co.*, 268 Wis. 586, 592-

93, 68 N.W.2d 429, 433 (1955)). The court must construe a plain and

unambiguous contract as it stands without considering extrinsic evidence to

determine either the meaning of the contract or the intent of the parties. *In re*

*Marriage of Jantzen*, 304 Wis. 2d 449, 458, 737 N.W.2d 5, 9 (Wis. App. 2007)

and *Winters v. Winters*, 281 Wis. 2d 798, 807, 699 N.W.2d 229, 234 (Wis. App.

2005). The analysis ends if the terms of a contract convey a clear and

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 9

unambiguous meaning. *Riegleman v. Krieg*, 271 Wis. 2d 798, 808, 679 N.W.2d 857, 863 (Wis. App. 2004).

The parties do not argue that the ICOA contains any ambiguities. Accordingly, the Court will construe the plain language of the ICOA as it stands.

The plain language of the ICOA clearly expresses that it is an independent contractor agreement.  Kost agreed to "render freight loading, transporting and unloading services" to Schneider as an independent contractor.  Paragraph 25 of the ICOA, quoted above, together with paragraph 3.(c) of the ICOA, clearly express the parties' intent to define and maintain their relationship as an independent contractor relationship, and to prevent the creation of an employer/employee relationship between Schneider and Florea.

Generally speaking, Schneider is permitted to transport freight as a motor carrier either by the use of equipment it owns, or by the use of equipment it leases under the terms of a written lease agreement.  49 U.S.C. § 14102; 49 U.S.C. § 376.11(a) (requiring a written lease agreement) and § 376.12 (setting forth specific requirements of a written lease agreement).  Therefore, consistent with the foregoing provisions of federal law and regulations, the ICOA provides that Kost "shall lease to [Schneider] the Equipment" owned by Kost, i.e. the semi tractors

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 10

used to pull Schneider's trailers and freight.  Dkt. # 94-3 at 10 of 46, ¶ 3.(a).

Accordingly, the ICOA was also an equipment leasing agreement.

Although the ICOA was an equipment leasing agreement, it did not lease

employees to Schneider.  Since Kost's semi tractors had to be operated by drivers,

the ICOA clarified that Kost will provide the individuals who would drive its semi

tractors.  The ICOA clearly states that the drivers were Kost's drivers, i.e.

individuals employed by Kost, and that the drivers were operating Kost's semi

tractors on behalf of Kost.  Thus, there is no provision of the ICOA whereby Kost

agreed to lease its drivers to Schneider.  Rather, the ICOA provided that Kost

would use its own employees to drive its trucks to perform its obligations under

the ICOA.

Other provisions of the ICOA confirm that Kost retained its drivers as its

employees, and did not lease them to Schneider.  Under the ICOA Kost retained

full control and direction over all aspects of it business, and retained responsibility

for its employees' wages, hours, working conditions, and all other aspects of its

employment relationship with its employees.  Kost agreed to pay or withhold its

employees' taxes, and it agreed to provide workers' compensation coverage for its

employees.  Therefore, although Kost leased its equipment to Schneider, it

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 11

retained its drivers as its employees and did not lease them to Schneider.

As construed under Wisconsin laws, the Court concludes that the plain and unambiguous meaning of the ICOA establishes that it was an independent contractor agreement and an equipment leasing agreement. Its terms did not lease Kost's employees, including Florea, to Schneider.

The Court's conclusion as to the proper construction of the ICOA is further bolstered by the definition of an "employee leasing agreement" as that phrase is used in the context of the Wisconsin workers' compensation exclusivity protection Schneider seeks to invoke. For purposes of Wisconsin's workers' compensation laws, an "employee leasing agreement" is defined as follows:

> a written contract between an employee leasing company and a client under which the employee leasing company provides all or part of the nontemporary, ongoing employee workforce of the client.

Wis. Stat. § 102.315(1)(e). The plain and unambiguous terms of the ICOA did not require Kost to provide its drivers, including Florea, to Schneider to serve as part of Schneider's "employee workforce". Florea was never Schneider's employee. Rather, under the terms of the ICOA he served "solely" as Kost's employee. Accordingly, the ICOA is not an "employee leasing agreement."

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 12

## C.    <u>Workers' Compensation Exclusivity Protection - Montana Law</u>

Having construed the ICOA under Wisconsin law, as it must, to characterize the relationship between Schneider and Kost, the Court next considers the issue of which state's workers' compensation exclusivity laws are applicable to Schneider's claim of exclusivity protection.  During the June 5 hearing in this matter the parties all stipulated to the application of Montana's workers' compensation laws to Schneider's motion.  Therefore, the Court will consider Montana law to determine whether Schneider is entitled to workers' compensation exclusivity protection.

The Montana Professional Employer Organizations and Groups Licensing Act ("Professional Employer Act") (Mont. Code Ann. § 39-8-101 et seq.) protects "client" companies from liability to "leased employees" for their work-related injuries.  The exclusivity provision of the Act on which Schneider relies provides, in part, as follows:

> (a) Subject to any contrary provisions of the contract between the client and the professional employer organization or group, the professional employer arrangement that exists between the parties must be interpreted for purposes of insurance, bonding, and employer liability pursuant to subsection (8)(b).

> (b) The professional employer organization or group:

>> (i) is entitled, <u>along with the client</u>, to the exclusivity of the remedy

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 13

> under both the workers' compensation and employers' liability
> provisions of a workers' compensation policy or plan of either party[.]

Mont. Code Ann. § 39-8-207(8)(a) and (b) (emphasis added).  Montana's workers'

compensation exclusivity provision, in turn, provides that

> an employer is not subject to any liability whatever for the death of or
> personal injury to an employee covered by the Workers' Compensation Act
> or for any claims for contribution or indemnity asserted by a third person
> from whom damages are sought on account of such injuries or death.

Mont. Code Ann. § 39-71-411.  Thus, an entity qualifying as a "client" under the

Professional Employer Act is entitled to the exclusivity protection established in §

39-71-411.

The applicability of the exclusivity protection under the Professional

Employer Act to any particular situation is limited by its terms which are defined

in the Act.  The exclusivity protection under Mont. Code Ann. § 39-8-207(8)

applies only to "professional employer organizations" and the "client".  Those

terms, and other related terms, are defined in the Professional Employer Act as

follows:

> "'Professional employer organization' means:

>> (i) a person that provides services of employees pursuant to one or
>> more professional employer arrangements or to one or more employee
>> leasing arrangements; or

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 14

(ii) a person that represents to the public that the person provides services pursuant to a professional employer arrangement."[1]  Mont. Code Ann. § 39-8-102(11)(a);

"'Client' means a person that obtains all or part of the person's workforce from another person through a professional employer arrangement."  Mont. Code Ann. § 39-8-102(2);

"'Professional employer arrangement' means an arrangement by contract or otherwise under which:

(i) a professional employer organization or group assigns employees to perform services for a client;

(ii) the arrangement is or is intended to be ongoing rather than temporary in nature; and

(iii) the employer responsibilities are shared by the professional employer organization or group and the client."  Mont. Code Ann. § 39-8-102(9)(a); and

"'Employee leasing arrangement' means an arrangement by contract or otherwise under which a professional employer organization hires its own employees and assigns the employees to work for another person to staff and manage, or to assist in staffing and managing, a facility, function, project, or enterprise on an ongoing basis."  Mont. Code Ann. § 39-8-102(5).

In its motion and its brief in support Schneider merely relies on the

exclusivity provision of Mont. Code Ann. § 39-8-207(8)(b), and claims protection

---

[1]Schneider does not argue that Kost represents to the public that it is a professional employer organization.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 15

thereunder without identifying any specific facts to establish that it falls within the scope of the statute and the statutory definitions quoted above.  *See* Dkt. # 93 at 14.  Schneider's conclusory statements fail to satisfy its initial summary judgment burden.

Schneider, as the putative "client", can enjoy exclusivity protection only if it "obtain[ed] all or part of [its] workforce from another person[.]"  Mont. Code Ann. § 39-8-102(2).  As concluded above, under the ICOA Schneider did not obtain any employee "workforce" from Kost.  Rather, Kost rendered freight transportation services to Schneider through the use of Kost's employees.  Therefore, Schneider does not qualify as a "client" under the Professional Employer Act.

Furthermore, to qualify as a "client" Schneider must have obtained its workforce "through a professional employer arrangement."  Mont. Code Ann. § 39-8-102(2).  Thus, the definition of a "professional employer arrangement" under Mont. Code Ann. § 39-8-102(9)(a), supra, is controlling.

In response to Schneider's summary judgment motion, Defendants primarily focus on the provision of Mont. Code Ann. § 39-8-102(9)(a)(iii) requiring that Schneider and Kost must have shared employer responsibilities for their relationship to qualify as a "professional employer arrangement".  Defendants

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 16

contend Schneider had no employer responsibilities with respect to Florea.

The ICOA imposed employer responsibilities on Kost.  It obligated Kost to obtain workers' compensation insurance for its employees, and to pay or withhold their employment taxes.  Significantly, Kost was obligated to "determine the manner, means and methods of performance of" its obligations under the ICOA. Specifically, the ICOA stated that Kost "shall retain all responsibility for [...] [t]he wages, hours, working conditions, management[,] supervision and all other aspects and requirements of any kind whatsoever related to [Kost's] employees[.]" Dkt. # 94-3 at 8 of 46, ¶ 2.(b)(i) (emphasis added).  By the terms of the ICOA Florea and Schneider did not have an employer/employee relationship.  Thus, arguably the ICOA placed all employer responsibilities on Kost, and it did not impose any employer responsibilities on Schneider.

In its reply brief, Schneider argues it "shared" employer responsibilities with Kost.  Despite the independent contractor relationship between Schneider and Kost as reflected in the ICOA, the record also reflects that Florea engaged in certain activities directly with Schneider.  Florea submitted his Driver Qualification Application, his Personal Reference Form, and his Annual Violation and Review Record forms directly to Schneider.  Schneider's Statement of

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 17

Undisputed Facts ("SUF") at ¶ 9.  Upon review of Florea's application, a representative of Schneider contacted Florea to tell him he was hired.  Deposition of Marcel Florea (March 18, 2009) at 223.  Florea also participated in training provided by Schneider in December 2005, and Schneider's trainer/instructor provided Florea with some "books".  Schneider's SUF at ¶ 9; Depo. of Florea at 221-222.  Florea received a driver number from Schneider (Depo. of Florea at 218), requested time off from Schneider (*id*. at 224), submitted reports to Schneider (*id*. at 226-227), and received his load and delivery destination information from Schneider (*id*. at 227).

Based on Florea's foregoing activities with Schneider, Schneider contends the following specific matters are "employer responsibilities" which it undertook:

1. Schneider reviewed Florea's Driver Qualification Application and Personal Reference Form;

2. Schneider informed Florea that he was hired;

3. Schneider required Florea to submit his Annual Violation and Review Record forms, and other reports directly to it;

4. Schneider provided training to Florea and provided him with "books";

5. Schneider issued Florea a driver number; and

6. Schneider provided Florea with his load and delivery destination

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 18

information.

Viewed in light of the terms of the ICOA, the foregoing matters are not necessarily "employer responsibilities", and may instead be matters regarding the parties' compliance with specific obligations under the ICOA.  With respect to items 1 and 2 above, the ICOA provides as follows:

> Drivers. [Kost] shall provide competent drivers who meet [Schneider's] minimum driver qualification standards and all of the requirements of the U.S. Department of Transportation ("DOT"), including but not limited to, familiarity and compliance with state and federal motor carrier safety laws and regulations.  The parties agree that [Schneider] may, in its sole discretion, disqualify any driver provided by [Kost] in the event that the driver is found to be unsafe, unqualified pursuant to federal or state law, in violation of [Schneider's] minimum qualification standards or incompetent, in which case [Kost] shall be obligated to furnish another competent, reliable and qualified driver that meets the minimum qualification standards set forth by [Schneider].

Dkt. #94-3 at 9 of 46, ¶ 2.(d).

Pursuant to ¶ 2.(d), Kost was obligated to provide qualified drivers and, in turn, Schneider necessarily had to review and approve of any driver provided by Kost.  Items 1 and 2 above merely reflect the process in which the parties engaged under ¶ 2.(d), including Schneider's notification to Florea that it reviewed and approved of his qualifications.  The parties' compliance with the terms of ¶ 2.(d) does not necessarily make Schneider Florea's employer.  Nor is Schneider's

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 19

compliance with ¶ 2.(d) necessarily an "employer responsibility" per se.  One who

engages an independent contractor may contractually impose terms or conditions

on the independent contractor's compliance with the parties' agreement without

taking on the independent contractor's employer responsibilities to its employees.

At a minimum, the matters in items 1 and 2 above, together with paragraph 2.(d)

of the ICOA, raise questions of fact as to whether Schneider engaged in "employer

responsibilities" for the trier of fact to resolve.

Item 3 above involves Florea's submission of forms, records, and other

reports to Schneider.  The ICOA required Kost to submit various "paperwork"

matters to Schneider, including "accident reports", and other reports and

documents.  Dkt. #94-3 at 9 of 46, ¶¶ 2.(d), (f), and (i).  Therefore, Florea's

submission of the documents to Schneider may constitute nothing more than

Kost's compliance with the terms of the ICOA, rather than Schneider's assumption

of an "employer responsibility".  In any case, this matter poses a question of fact

for resolution by the trier of fact.

Item 4 above - Schneider's training and "books" provided to Florea -

arguably constitutes a responsibility which an employer would ordinarily

undertake.  Nevertheless, the ICOA required Kost's drivers to operate Kost's

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 20

equipment in a safe manner and in compliance with Schneider's policies and

procedures.  Specifically, the ICOA states as follows:

> [Kost] agrees that any driver utilized by [Kost] shall comply with
> [Schneider's] policies and procedures; including but not limited to
> [Schneider's] Independent Contractor and Fleet Driver Reverence Guide,
> and any subsequent revisions thereto, which will be provided by
> [Schneider].

Dkt. #94-3 at 9 of 46, ¶ 2.(h).  Therefore, an issue of fact arises as to whether the

training and "books" Schneider provided constitute and an employer

responsibility, or were merely required by paragraph 2.(h) to enable Kost to

comply with 2.(h).  Even if these matters are an "employer responsibility", a

further question arises as to whether Schneider's efforts in this regard sufficiently

demonstrate that Schneider "shared" employer responsibilities with Kost.

Additionally, as quoted above, ¶¶ 2.(b) and 25 of the ICOA maintained the

parties' independent contractor relationship and otherwise allowed Kost to "retain

all responsibility for [...] all other aspects and requirements of any kind

whatsoever related to [Kost's] employees[.]"  Therefore, the paragraphs raise

questions of fact as to whether Schneider was assuming an employer responsibility

by providing training and "books" to Florea.

Item 5 above - Florea's driver number - is unexplained by the parties.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 21

Without more information, the matter appears to be a practice in which Schneider engaged for its own identification purposes, and does not demonstrate that Schneider undertook an "employer responsibility" relative to Florea. Nonetheless, the issue raises questions of fact for resolution at trial.

Item 6 above - Florea's load and destination information - identifies a channel of communication and is not necessarily an "employer responsibility" Schneider owed to Florea. Under the terms of the ICOA, Schneider agreed to make freight available to Kost for transportation, and the availability of particular freight loads and their destination ultimately had to be communicated to Kost's drivers. This direct communication from Schneider to Florea may have been reasonable for efficiency purposes and does not necessarily demonstrate Schneider's assumption of an employer responsibility. However, Schneider does not provide further background information on these communications.

As a general matter, the obligation of one party to an independent contractor agreement to convey information to the other party or its employees does not render the former party an employer, nor does it make the assumption of the obligation an "employer responsibility". At the very least, the issue is a question of fact for resolution at trial.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 22

Finally, with respect to all of items 1-6 above, Schneider concedes it was not Florea's employer.  Such concession, therefore, raises issues of fact as to whether Schneider undertook any "employer" responsibilities.[2]

Schneider goes on to identify specific provisions of the ICOA which it asserts establish that it undertook "employer responsibilities" relative to Florea. The ICOA gave Schneider the option to obtain workers' compensation insurance coverage for Kost's drivers or employees, but only if Kost failed to procure such insurance.  Dkt. #94-3 at 16-17 of 46, ¶ 7.(f).  However, that provision, if Schneider exercised its option, provided that Schneider would obtain the insurance in Kost's name.  *Id*.  Additionally, the ICOA permitted Schneider to charge the costs of the insurance it procured back to Kost.  *Id*.  Therefore, paragraph 7.(f) suggests Schneider would merely act, if necessary, as Kost's agent for purposes of obtaining workers' compensation insurance, not as an employer undertaking an employer responsibility.  Furthermore, since Schneider would not have been financially responsible for the cost of the insurance, arguably it would not have been assuming an employer responsibility if it had exercised its option under

---

[2]Additionally, Florea's December 5, 2005 Letter of Understanding states that Florea recognized Schneider was not "responsible" for Florea's employment relationship with Kost.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 23

paragraph 7.(f).  As with the other issues raised, this matter poses issues of fact for consideration by the trier of fact.

Next, Schneider contends it undertook employer responsibilities under the ICOA which required Kost's drivers to comply with Schneider's Drug and Alcohol Policy, to submit to random drug testing, and to submit to physical examinations for purposes of determining if the drivers were medically qualified. Dkt. # 94-3 at 9, 14 of 46, ¶¶ 2.(g) and 5.(d).  Similar to the driver qualification and approval paragraph of the ICOA discussed above, paragraphs 2.(g) and 5.(d) are terms and conditions imposed on Kost's compliance with the ICOA.  They are not responsibilities Schneider undertook towards Florea or Kost's other drivers.

Finally, Schneider identifies the following provision of the ICOA which it contends imposed an employer responsibility on it:

> No Discrimination. [Kost] and [Schneider] agree to comply with the various state and federal employment laws to which each may be subject.

Dkt. # 94-3 at 13 of 46, ¶ 5.(b).  Schneider does not, however, identify any employment law to which it was subject.

The Court notes that one possible employment law to which Schneider may have been subject, for example, is Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  However, "Title VII protects employees, but does not

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 24

protect independent contractors." *Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999). *See also Salamon v. Our Lady of Victory Hospital*, 514 F.3d 217, 226 (2nd Cir. 2008). Since Schneider concedes Florea was not its "employee", it was not subject to the provisions of Title VII.

Schneider has failed to identify any employment law to which Schneider was subject. Absent an applicable employment law to which Schneider was subject, Schneider has failed to establish that it "shared" an employer responsibility to comply with any specific employment law.

For the reasons stated, Schneider has failed to meet its summary judgment burden to establish the absence of a genuine issue of material fact and that it is entitled to workers' compensation exclusivity protection under Montana's Professional Employer Act. "A moving party without the ultimate burden of persuasion at trial - usually, but not always, a defendant – has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Specifically, Schneider has not undisputedly established that it shared "employer responsibilities" with Kost. Absent such showing, Schneider and Kost's relationship cannot qualify as a professional

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 25

employer arrangement under Mont. Code Ann. § 39-8-102(9)(a)(iii).

Consequently, Schneider cannot qualify as a "client" entitling it to workers'

compensation exclusivity protection under Mont. Code Ann. § 39-8-207(8)(b).

### D.   **Immunity Under General Contractor Law**

In its reply brief Schneider asserts, as an alternative to its workers'

compensation exclusivity theory, that if its relationship with Kost is not

characterized as an employee leasing arrangement then Schneider should be

characterized as a general contractor.   Schneider argues that as a general

contractors it is immune from liability for injuries suffered by a subcontractor's

employee or an independent contractor's employee.

Schneider did not, however, advance its general contractor immunity theory

in its summary judgment motion and opening brief.  Rather, it asserted this theory

for the first time in its reply brief.  Therefore, Defendants have not had an

opportunity to respond to Schneider's argument in this regard.

In summary judgment proceedings "[i]t is not proper for the court to

consider new arguments raised in a reply." *Lincoln General Ins. Co. v. Access*

*Claims Administrators, Inc.*, 596 F. Supp. 2d 1351, 1372 n.10 (citing *Von Brimer*

*v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir. 1976)).  Accordingly, the Court

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 26

should not consider Schneider's general contractor immunity theory at this juncture.

## IV.    CONCLUSION

Numerous issues of fact exist with respect to the question of whether Schneider and Kost's relationship constituted a professional employer arrangement under Montana law.  Therefore, Schneider's Motion for Partial Summary Judgment should be DENIED.

DATED this 15th day of June, 2009.

  /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE - Page 27